**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NUTRITION DISTRIBTION LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>CHAOS AND PAIN, LLC,<br><br>                              Defendant. | Case No.: 16-CV-1932 W (JMA)<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO FILE DOCUMENTS UNDER SEAL [DOC. 13]; AND**<br><br>**(2) GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT [DOC. 12]** |

Pending before the Court are Plaintiff's motion to file documents under seal, and Plaintiff's Application for Default Judgment. [Docs. 13, 12.] The Court decides the matters on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **GRANTS** Plaintiff's motion to file under seal, **GRANTS** Plaintiff's application for default judgment, orders that default judgment be entered in favor of Plaintiff, and awards damages totaling $81,005.40.

//
//
//

1

# I. BACKGROUND

Plaintiff Nutrition Distribution LLC filed this action on August 1, 2016, alleging that Defendant unlawfully advertised unsafe products in violation of the Lanham Act, 15 U.S.C. § 1125, et seq. (*See Compl.* [Doc. 1].)

According to the Complaint, Plaintiff is an Arizona limited liability company in the business of manufacturing and marketing sports supplements. (*See Compl.* [Doc. 1] ¶¶ 11, 14.) Defendant Chaos and Pain, LLC, is one of Plaintiff's competitors based in Alabama. (*See id.* [Doc. 1] ¶ 19.) The Complaint alleges that Defendant sells products known as Selective Androgen Receptor Modulators ("SARMs") that "are synthetic drugs intended to have effects similar to those of illegal anabolic steroids." (*Id.* [Doc. 1] ¶¶ 1–7, 19–24.) However, according to the Complaint, these SARMs are "not safe for human consumption" and "likely pose significant health and safety risks to consumers." (*Id.* [Doc. 1] ¶¶ 21–22.) According to the Complaint, "[t]he use of such falsely marketed substances has the tendency to deceive a substantial segment of the public and consumers, including those in this district, into believing that they are purchasing a product with different characteristics"—namely that the products are safer than anabolic steroids. (*See id.* [Doc. 1] ¶¶ 28–30.) The Complaint further alleges that Plaintiff has suffered economic loss and "loss of goodwill in Plaintiff's products" as a result of the introduction of the SARMs into the nutrition supplement market. (*See id.*)

Plaintiff served Defendant on August 12, 2016. (*Proof of Service* [Doc. 3].) Defendant did not timely respond. On October 4, 2016, the Clerk entered Defendant's default. (*Clerk's Entry of Default* [Doc. 4].)

Plaintiff initially applied for default judgment on December 9, 2016. (*Application for Default Judgment* [Doc. 6].) The Court denied this application without prejudice on May 24, 2017, reasoning that Plaintiff had not established its damages to a reasonable certainty. (*May 24, 2017 Order* [Doc. 9].) The Court later granted Plaintiff's motion for leave to conduct discovery on the damages issue. (*September 28, 2017 Order* [Doc. 11].)

Plaintiff applied for default judgment once again on January 23, 2018, and it filed a concurrent motion to file documents under seal. [Docs. 12, 13.]

II. **LEGAL STANDARD**

A. **Motion to File Under Seal**

Federal law creates a strong presumption in favor of public access to court records. But this right of access is not absolute. San Jose Mercury News, Inc. v. U.S. Dist. Court– N. Dist. (San Jose), 187 F.3d 1096, 1102 (9th Cir. 1999). "Every court has supervisory power over its own records and files[,]" and may provide access to court documents at its discretion. See Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir. 1995) (quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978)). District courts therefore have authority to seal and unseal court records, a power that derives from their inherent supervisory power. See Hagestad, 49 F.3d at 1434.

When a district court is asked to seal court records in a civil case, the presumption in favor of access can be overcome by a showing of "sufficiently important countervailing interests." See San Jose Mercury News, 187 F.3d at 1102. The factors relevant to determining whether this presumption has been overcome include the " 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.' " Hagestad, 49 F.3d at 1434 (quoting EEOC v. Erection Co., Inc., 900 F.2d 168, 170 (9th Cir. 1990). "After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." Id. (citing Valley Broad. Co. v. United States Dist. Court, 798 F.2d 1289, 1295 (9th Cir. 1986)).

As a natural consequence of the public's right of access to records in civil cases, the presumption of public access cannot be overcome by a mere stipulation of the parties. As Judge Posner recognized, the district judge is duty-bound to scrutinize any request to

seal court documents and therefore "may not rubber stamp a stipulation to seal the record." Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999); accord City of Hartford v. Chase, 942 F.2d 130, 136 (1st Cir. 1991) ("[T]he trial court—not the parties themselves—should scrutinize every such agreement involving the sealing of court papers and what, if any, of them are to be sealed . . . .").

### B. Application for Default Judgment

Federal Rule of Civil Procedure 55(b)(2) governs applications for default judgment. Default judgment is available as long as the plaintiff establishes that: (1) the defendant has been served with the summons and complaint and default was entered for their failure to appear; (2) the defendant is neither a minor nor an incompetent person; (3) the defendant is not in military service or not otherwise subject to the Servicemembers Civil Relief Act; and (4) if the defendant has appeared in the action, that the defendant was provided with notice of the application for default judgment at least seven days prior to the hearing. See, e.g., 50 U.S.C. § 3931; Fed. R. Civ. P. 55; Twentieth Century Fox Film Corp. v. Streeter, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006).

Entry of default judgment is within the trial court's discretion. See Taylor Made Golf Co. v. Carsten Sports, Ltd., 175 F.R.D. 658, 660 (S.D. Cal. 1997) (Brewster, J.) (citing Lau Ah Yew v. Dulles, 236 F.2d 415 (9th Cir. 1956)). In making this determination, the court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Upon entry of default, the factual allegations in plaintiff's complaint, except those relating to damages, are deemed admitted. See, e.g., Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557,

4

560 (9th Cir. 1977)). Where the amount of damages claimed is a liquidated sum or capable of mathematical calculation, the court may enter a default judgment without a hearing. See Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981). When it is necessary for the plaintiff to prove unliquidated or punitive damages, the court may require plaintiff to file declarations or affidavits providing evidence for damages in lieu of a full evidentiary hearing. Transportes Aereos De Angola v. Jet Traders Invest. Corp., 624 F. Supp. 264, 266 (D. Del. 1985).

### III. DISCUSSION

#### A. Motion to File Under Seal

Plaintiff seeks to file two exhibits under seal. (*Mot. to File Under Seal* [Doc. 13]; *Sealed Lodged Documents* [Doc. 14].) Both are financial records, and both contain the personal information of the customers who did business with Defendant. This information is private and presents a sufficiently important countervailing interest to override the presumption of public access to court documents. See San Jose Mercury News, 187 F.3d at 1102. Plaintiff's motion to file under seal will be granted. [Doc. 13.]

#### B. Application for Default Judgment

As noted above, Plaintiff served Defendant on August 12, 2016. (*Proof of Service* [Doc. 3].) Defendant did not timely respond. On October 4, 2016, the Clerk entered Defendant's default. (*Clerk's Entry of Default* [Doc. 5].)

Accordingly, per Eitel, 782 F.2d at 1471–72, the Court considers the following factors in determining whether the circumstances warrant an entry of default judgment.

##### 1. The Possibility of Prejudice to the Plaintiff

Despite proper service on August 12, 2016, Defendant has not responded to the Complaint. (*Proof of Service* [Doc. 3].) Nor has it requested additional time to do so, or taken any other action to indicate that it will respond in the future. As time continues to

5

pass without any action on the part of Defendant, it becomes increasingly unlikely that a response is forthcoming. This delay is to the detriment of Plaintiff. In the absence of a default judgment, it is likely that Plaintiff would be left without a remedy. See, e.g., Bd. of Trustees of Laborers Health & Welfare Tr. Fund for N. California v. Cal-Kirk Landscaping, Inc., 2012 WL 5869619, at *4 (N.D. Cal. Nov. 19, 2012).

This factor counsels in favor of granting Plaintiff's application.

### 2. The Merits of Plaintiff's Substantive Claims

The allegations underlying Plaintiff's substantive claim are fundamentally straightforward. Defendant falsely advertised a potentially hazardous dietary supplement as safe for human consumption. (*See Compl.* [Doc. 1] ¶¶ 19–23.) Upon the Clerk's entry of default, the Court takes these allegations as true. See, e.g., Televideo Sys., 826 F.2d at 917–18.

This factor counsels in favor of granting Plaintiff's application.

### 3. The Sufficiency of the Complaint

The Complaint is sufficient.

The elements of a Lanham Act false advertising claim are:

> **(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.**

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).

Plaintiff's Complaint alleges that Defendant has made false statements in its advertisements as to the safety of the SARMs products. (*Compl.* [Doc. 1] ¶¶ 20–24, 26–27.) It alleges that these statements have the tendency to deceive consumers. (*Id.* [Doc.

6

16-CV-1932 W (JMA)

1] ¶ 28.) It alleges that the deception is material, has been introduced into interstate commerce, and has injured Plaintiff. (*Id.* [Doc. 1] ¶¶ 29–31.)

The Complaint is sufficient. This factor counsels in favor of granting the application.

### 4. The Sum of Money at Stake

Plaintiff's application seeks damages in the amount of $68,459.52,[1] plus costs and attorneys' fees. (*Tauler Decl.* [Doc. 12-2] ¶ 3.) This is a significant sum. However, for the reasons stated below, it is an appropriate measure of the damages sustained by Plaintiff.

This factor counsels in favor of granting the application.

### 5. The Possibility of a Dispute Concerning the Material Facts

There is no indication that a dispute is likely concerning any material facts. Upon the entry of the default, the factual allegations in the Complaint are deemed admitted. See Televideo Sys., 826 F.2d at 917–18.

This factor counsels in favor of granting the application.

### 6. Whether the Default was Due to Excusable Neglect

There is no indication that the default was due to excusable neglect. As noted, Defendant was served with the summons and Complaint in August of 2016. (*Proof of Service* [Doc. 6].) It has failed to respond in the more than nineteen months since then.

This factor counsels in favor of granting the application.

//
//

---

[1] It also seeks an enhancement of damages. (*App. for Default Judgment* [Doc. 12-1] 18:8–24.) As discussed below, this is not appropriate. As such, it is not taken into consideration here.

7

### 7. Strong Policy Favoring Decisions on the Merits

This factor favors denial of an application for default judgment.

Eitel factors one through six favor granting Plaintiff's application. In light of the foregoing, the Court will exercise its discretion to enter default judgment. See Fed. R. Civ. P. 55(b); Eitel, 782 F.2d at 1471–72.

Defendant's default operates as an admission of the allegations in the Complaint, save those relating to damages. See Televideo, 826 F.2d at 917–18. As such, remedies are the only remaining issue in this case.

### 8. Remedies

#### a) Permanent Injunctive Relief

Courts have the power to grant injunctions "according to the principals of equity and upon such terms as [they] may deem reasonable . . . to prevent a violation of [15 U.S.C. § 1125(a)." See 15 U.S.C. § 1116(a).

**According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.**

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Plaintiff's request for an injunction comprises two separate requests.

First, Plaintiff seeks a court order permanently forbidding Defendants from selling SARMs. (*App. for Default Judgment* [Doc. 12-1] 14:12–15:24.) This is not appropriate. Plaintiff's lawsuit is based on the theory that Defendant has improperly advertised the products in question. Plaintiff does not justify its position that its competitor should be permanently enjoined from selling its products. Plaintiff's harms are economic in nature. There is no indication that monetary damages are inadequate to compensate for them.

Second, Plaintiff requests a court order permanently forbidding Defendant—its competitor—from operating its website. (*App. for Default Judgment* [Doc. 12-1] 14:12–

8

15:24.) Plaintiff does not indicate precisely what appears on this website, but it seems to be urging the Court to enjoin all speech on the site based on its content. "Content-based regulations [on speech] pass constitutional muster only if they are the least restrictive means to further a compelling interest." Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1016 (9th Cir. 2004) (quoting S.O.C., Inc. v. County of Clark, 152 F.3d 1136, 1145 (9th Cir.1998)). Plaintiff makes no such argument here. And once again, Plaintiff does not demonstrate the inadequacy of a monetary remedy.

Plaintiff's requests for injunctive relief will be denied.

### b) Monetary Damages
#### (1) Defendant's Profits

Plaintiff seeks Defendant's profits. (*App. for Default Judgment* [Doc. 12-1] 15:25–18:24.) It calculates these profits by reference to two records of sales on electronic retailers on which Defendant sold the products in question—an eBay store, and Defendant's website. (*Id.*) Only one of these labeled the transactions in question—the eBay store. 4.57% of Defendant's total sales on the eBay store constituted SARMs products, which form the basis for this action—$2,959.46 out of $64,748.45. (*Id.*) Plaintiff applies that same percentage to Defendant's website sales, $1,433,918.14, none of which are labeled, to conclude that approximately $65,530.06 of the proceeds of Defendant's website sales are attributable to the sales of SARMs products. (*Id.*) Adding this total to the $2,959.46 from the sale of SARMs on the eBay store, Defendants' total damage calculation is $68,459.52. (*Id.*) This is a reasonable basis for computing Defendant's profits from the sale of SARMs products. See Eastman Kodak Co. of N.Y. v. S. Photo Materials Co., 273 U.S. 359, 379 (1927).

//
//
//
//

### (2) Enhancement of Damages

Plaintiff seeks to multiply this $68,459.52 figure by 1.5 on the ground that "Defendant's deception goes to an issue of public health." (*App. for Default Judgment* [Doc. 12-1] 18:8–24.) This is inappropriate. "[T]he Lanham Act has been construed to expressly forbid the award of damages to punish an infringer." Skydive Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1114 (9th Cir. 2012); 15 U.S.C. § 1117(a). On the contrary, " 'enhancement [of damages] is only available to ensure that the plaintiff receives compensation.' " Id. (quoting BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1096 (7th Cir. 1994)). Plaintiff makes no showing that such a multiplier is necessary to achieve just compensation, but rather urges the Court to punish Defendant for its bad acts. The law does not allow for this.[2] No enhancement is appropriate.

### (3) Attorneys' Fees

The Lanham Act allows for the recovery of costs, and an award of reasonable attorneys' fees "in exceptional cases." 15 U.S.C. § 1117. An exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated[.]" Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id.

Plaintiff's counsel requests $495.88 in costs—$400 in filing fees, $1.88 in postage, and $94 in service of process fees. (*Tauler Decl.* [Doc. 12-2] ¶ 8.) These figures are appropriate.

---

[2] Plaintiff's request for judicial notice is granted. See Fed. R. Evid. 201. The documents in question were not necessary to the Court's decision and were not taken into consideration.

Plaintiff's counsel requests $14,610 in fees, arguing that this is an exceptional case because of its relationship to public health. (*See App. for Default Judgment* [Doc. 12-1] 18:25–20:19; *Tauler Decl.* [Doc. 12-2].) Given the potentially unsafe nature of the substances being sold and the fact that Defendant failed to appear, this is an unusual case. Attorneys' fees are appropriate.

However, Mr. Tauler's claimed billable rate of $650/hour is not. Plaintiff's counsel attempts to justify this figure by reference to the fact that he attended Harvard Law School and practices in Los Angeles. 15 U.S.C. § 1117 allows the Court to award only reasonable fees. Mr. Tauler will be compensated at the rate of $450/hour. The other rates are reasonable—$385/hour for John Lin, Tauler's of counsel, and $300/hour for his associate, Valerie Saryan.

Mr. Tauler reasonably billed for 12.5 hours, Mr. Lin for 5 hours,[3] and Ms. Saryan for 15 hours. Mr. Tauler and his firm are entitled to recover a total of $12,050 for their work in this case.

In short, Plaintiff will recover $68,459.52 in Defendant's profits, plus $495.88 in costs and $12,050.00 in reasonable attorneys' fees, for a total of $81,005.40.

//
//
//
//
//
//
//
//

---

[3] Mr. Tauler's declaration calculates Mr. Lin's total fees at $1,985 for 5 hours of work at the rate of $385/hour. (*Tauler Decl.* [Doc. 12-2] ¶ 5.) This would appear to be a typo. The correct figure is $1,925.

11

## IV. CONCLUSION & ORDER

Plaintiff's motion to file documents under seal is **GRANTED**. [Doc. 13.]

Plaintiff's application for default judgment is **GRANTED**. [Doc. 12.]

Judgment is entered in favor of Plaintiff in the amount of $81,005.40. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: April 10, 2018

Hon. Thomas J. Whelan
United States District Judge